UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
RICHARD KATZMAN,                                                        :
                                                                        :    12 Civ. 4220 (PAE)
                                Plaintiff,                              :
                                                                        :    <u>OPINION & ORDER</u>
                -v-                                                     :
                                                                        :
HELEN OF TROY TEXAS CORPORATION and                                     :
HELEN OF TROY LIMITED,                                                  :
                                                                        :
                                Defendants.                             :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

   This Opinion and Order resolves the issues left open in the Court's decision of January 28, 2013, resolving defendants' motion for summary judgment. Dkt. 64 ("Opinion" or "Op.").

**I. Background**

  **A. Facts**

   This case involves a dispute over money residing in an escrow fund created in connection with a corporate acquisition. At the time that Kaz, Inc. ("Kaz") was acquired by defendants Helen of Troy Corporation and Helen of Troy Limited (collectively, "Helen of Troy" or "HoT"), $17.7 million of the purchase price was set aside in an escrow account, to cover, *inter alia*, any latent tax liabilities of Kaz. Under its agreements with Kaz, HoT was required, as of May 15, 2012, to consent to release to Kaz's selling shareholders the funds in the escrow account, unless specific circumstances (identified in the agreements) existed that justified retention of those funds. In this lawsuit, plaintiff Richard Katzman, who represents the selling shareholders, claimed that HoT had wrongly refused to release to them approximately $11.7 million from the escrow fund, corresponding to 18 distinct claims of breaches by Katzman of representations in

the Merger Agreement. Katzman brought claims for breach of contract and for a declaratory judgment.

### B. Opinion on Summary Judgment

In its January 28, 2013 opinion, the Court granted partial summary judgment for Katzman, but identified several issues on which additional briefing was necessary. Op. 37–39. The Court assumes knowledge of that decision. As pertinent here, the Court (1) entered summary judgment for Katzman on its breach of contract claims against HoT as to Claims Three, Four, Eight, and Eleven through Eighteen from HoT's Indemnity Demand Notice; (2) issued a declaratory judgment that ordered the release of funds from the escrow fund corresponding to those claims; and (3) denied Katzman summary judgment as to Claims One, Two, Five, Six, Nine, and Ten.

The Court sought the parties' views on the following issues:

1. Whether summary judgment in favor of HoT could be granted on the claims on which summary judgment was denied to Katzman, or whether additional findings must be made before determining that funds corresponding to these claims must remain in escrow;

2. With respect to Claim Seven, HoT's "New York State Claim," whether Katzman was conceding that $37,771.60 must be paid to HoT from the escrow fund, and if not, how the case should proceed as to that claim;

3. With respect to Claim Nine, HoT's "AMT Claim," how to proceed in light of the open factual questions identified in the Opinion;

4. With respect to the 11 claims on which summary judgment had been granted for Katzman, whether Katzman was entitled to pre- and post-judgment interest and the costs of collection.

Op. 38–39. The Court directed the parties to set out their views on these questions by letter.

### C. The Parties' Letter

In a joint letter, dated February 21, 2013, the parties agreed as to all open issues, except for prejudgment interest. Dkt. 66 (the "Letter"), at 2. Specifically, the parties agreed that:

1. Funds corresponding to Claims One, Two, Five, Six, Nine, and Ten should remain in escrow, without prejudice to Katzman's right to seek their release in the future, and that no further findings are necessary;

2. As to the New York State claim, Katzman conceded that $37,771.60 should be paid immediately to HoT from the escrow fund; and

3. As to the AMT Claim, Katzman conceded that funds corresponding to that Claim should remain in escrow.

Katzman also clarified that he does not seek "costs of collection" (*i.e.*, attorneys' fees or costs). Thus, to close the case, the Court need resolve only the issue of prejudgment interest.

### II.   Prejudgment Interest

Katzman argues that because, as a matter of statute, prejudgment interest is generally mandatory under New York law, it is mandatory here. HoT counters that, based on a recent New York Court of Appeals decision, *J. D'Addario & Co., Inc. v. Embassy Industries, Inc.*, 20 N.Y.3d 113 (2012), holding that parties can contract around the statutory requirement of prejudgment interest, they should be found to have done so in the Merger Agreement. Katzman has the better of this argument.

Under New York law, which governs the agreements at issue in the case,[1] prejudgment interest is generally mandatory in actions for breach of contract.  New York's Civil Practice Law and Rules provide that

> [i]nterest *shall be recovered* upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y. C.P.L.R. § 5001(a) (emphasis added).  In New York, the statutory rate for prejudgment interest in a breach of contract action is 9% per year.  *See id.* § 5004.

A long line of case law has held that prejudgment interest is mandatory.  As the Second Circuit has put the point: "Under New York law . . . a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."  *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991); *see also Capgemini U.S., LLC v. EC Mange, Inc.*, No. 10 Civ. 2486 (GBD) (HBP), 2012 WL 5938590, at *2 (S.D.N.Y. Nov. 27, 2012).  Further, even where, as here, damages are awarded from an escrow fund, prejudgment interest is generally awarded.  *See Callen v. Fourteenth Church of Christ, Scientist N.Y.C.*, 112 F. App'x 79, 81 (2d Cir. 2004) ("[T]he fact that the money was being held in an escrow account does not prevent the district court's action from being interpreted as an award of a sum.").  The New York Court of Appeals has explained that prejudgment interest is not a penalty to the breaching party, but rather serves to "compensate the wronged party for the loss of use of the

---

[1] New York law applies here, because the Merger Agreement and Escrow Agreements both contain a choice of law clause, stating that they are "governed by, and construed in accordance with, the laws of the State of New York."  Merger Agreement ("MA") § 12.8; *see also* Escrow Agreement ("EA") § 8(c) (same).  In New York, such forum selection clauses are "prima facie valid and enforceable unless shown by the resisting party to be unreasonable."  *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 612 (S.D.N.Y. 2008) (quoting *Brooke Grp. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996)).  In their briefs and at argument, the parties have treated New York law as governing, and the Court applied New York law in its January 28, 2013 Opinion.

money." *J. D'Addario*, 20 N.Y.3d at 117. As a result, "[t]here is no requirement that the breaching party obtain some benefit from the wronged party's money for statutory interest to be paid." *Id.*

Here, because the Court has found that HoT had breached its contract with Katzman by refusing to assent after May 15, 2012, to the release of funds corresponding to Claims Three, Four, Eight, and Eleven through Eighteen, C.P.L.R. § 5001(a) presumptively requires that prejudgment interest run on the improperly withheld sums from that point forward. HoT, however, relying on the New York Court of Appeals' decision in *J. D'Addario*, urges that the parties did not contemplate or agree that interest paid at the statutory rate would apply to such breaches. Rather, HoT argues that *J. D'Addario* compels the conclusion that Katzman waived its right under New York law to receive prejudgment interest in the event of such breaches.

At issue in *J. D'Addario* was a commercial real estate contract. The contract provided that the down payment of $650,000 from the buyer, J. D'Addario & Company ("D'Addario"), would remain in an escrow fund, which earned interest. The contract provided that in the event of a default by buyer D'Addario, the seller, Embassy Industries, would retain the amount in escrow as "liquidated damages" for the buyer's "failure or refusal . . . to consummate this transaction." *J. D'Addario*, 20 N.Y.3d at 121 n.*. The contract stated that the parties had agreed to this liquidated damages provision because "the entire damages which [Embassy] will thereby suffer cannot be exactly determined." *Id.* The contract stated that the escrow fund was to be the seller's "sole remedy" in the event of such a breach and was also to be the buyer's "sole obligation" in that circumstance. *Id.*

D'Addario then breached. After the signing of the contract, and 10 days before the closing, he "purported to terminate the contract" and did not attend the closing. *Id.* at 117. Embassy then declared D'Addario to be in default and retained its $650,000 down payment as

5

liquidated damages. *Id.* D'Addario then sued to recover its down payment, and Embassy counterclaimed. As relevant here, the trial court rendered a judgment, which awarded Embassy the $650,000 down payment plus 9% statutory interest and costs, for a total of $877,406. *Id.*

Following intermediate appellate review, a divided (3-2) Court of Appeals held, for D'Addario, that statutory prejudgment interest was unavailable. It acknowledged that the language of CPLR § 5001(a) was mandatory. *Id.* But, the Court of Appeals noted, Embassy and D'Addario had "agreed at the time of contract formation that the 'sole remedy' for Embassy and the 'sole obligation' of D'Addario in the event of a purchaser default would be an award of the down payment." *Id.* at 118. And, the Court of Appeals noted, "the parties agreed that the seller would have 'no further rights' against the purchaser once the down payment was paid as liquidated damages." *Id.* Further, "[t]he contract required that the down payment be placed in an interest-bearing account, so that the party entitled to the down payment would receive compensation for the deprivation of the use of its money in the form of bank-accrued interest." *Id.* On these facts, the Court of Appeals held, the parties' clear agreement should be enforced:

> [W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Regardless of what CPLR 5001(a) customarily requires in terms of statutory interest for breach of contract cases, the parties here decided that the amount escrowed should be the exclusive remedy to the wronged party. As we stated in *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 54 (1996), "parties to a civil dispute are free to chart their own course and, unless public policy is affronted, they may fashion . . . how damages are to be computed without interference by the courts."

*Id.* at 118–19 (alteration in original) (additional internal citation and quotation marks omitted).

HoT argues that § 10.6(b) of the Merger Agreement here waives statutory prejudgment interest in much the same way as the liquidated damages provision in the *J. D'Addario* contract did, and that *J. D'Addario* therefore controls this case. Section 10.6(b) provides that the "indemnification rights [provided for in Article X of the Merger Agreement] shall be the *sole and exclusive remedies* of the parties" after the closing. Merger Agreement ("MA") § 10.6(b)

6

(emphasis added).  It adds:  "To the maximum extent permitted by law, each of the parties hereby waives all other rights and remedies with respect to any matter in any way relating to this Agreement or arising in connection herewith, whether under any laws at common law, in equity or otherwise."  *Id.*  In another similarity, HoT notes that, like the down payment in *J. D'Addario*, the $17.7 million escrow fund set aside from the purchase price due to Katzman here is to earn interest:  The Escrow Agreement provides that the escrow fund, "together with any interest or other income accrued interest earned thereon," is "to be used for payment of certain contingencies in . . . Article X of the Merger Agreement."  Escrow Agreement ("EA") 1.  On the basis of these provisions, HoT argues, Katzman, like Embassy in *J. D'Addario*, clearly waived the right to statutory interest.

     HoT is correct that individual provisions of the Merger Agreement can be identified that echo terms in the *J. D'Addario* contract.  But that is not the relevant question.  Rather, under *J. D'Addario*, the relevant question is whether Katzman, in the agreement with HoT, clearly agreed to forego statutory prejudgment interest in the event of the type of contract breach by HoT that the Court has found.  The provision of the *J. D'Addario* agreement regarding the down payment was narrowly targeted to address a well-defined problem that the parties together expressly identified:  What remedy would the seller, Embassy, have in the event that the buyer, D'Addario, breached before the closing?  The parties agreed that in the event of such a breach, given the inability to determine Embassy's exact damages, the buyer's down payment would serve as "liquidated damages"; that this down payment would be Embassy's "sole remedy"; and the buyer, D'Addario, would have no other obligation.  *See J. D'Addario*, 20 N.Y.3d at 121 n.*.  And the dispute that ultimately arose between Embassy and D'Addario—based on D'Addario's failure to perform—was of precisely the nature envisioned in the parties' agreement.  On that basis, the Court of Appeals held that the parties had clearly agreed to "chart their own course,"

7

*Id.* at 118–19, and that Embassy had knowingly foregone any remedies for D'Addario's pre-closing breach other than the agreed-upon liquidated damages.

The same cannot be said here. To be sure, the $17.7 million escrow fund contemplated by the Merger Agreement, like the down payment in *J. D'Addario*, was designed for a distinct purpose. It serves to compensate HoT, up to $17.7 million, for later-discovered breaches by Katzman of its representations in the Merger Agreement (*e.g.*, as to Kaz's tax compliance). To this end, as the Court has held, the $17.7 million escrow fund set aside by Katzman was available to cover claims made as of May 15, 2012, of breaches by Katzman (*e.g.*, claims by tax authorities of tax deficiencies). *See* MA § 10.2. Section 10.6(b) of the Merger Agreement, which limited HoT's indemnification rights to those set out in the Merger Agreement, thus capped HoT's ability to recover funds from Katzman. Had breaches by Katzman of its tax representations resulted in more than $17.7 million of damage to Hot, the § 10.6(b) limitation on HoT's remedies would have come into play.

But this lawsuit involves a controversy of quite a different nature. It involves a breach of contract by HoT, not Katzman. And that breach did not involve HoT's conduct at the time of the Merger Agreement. Instead, it involved a breach, 17 months after the December 2010 merger, by HoT of its duties under the Agreement with regard to the administration of the escrow fund itself. Specifically, the Court has found, HoT breached the Merger Agreement in May 2012, by unilaterally blocking, without contractual justification, the release from the escrow fund of $9,362,390, to which Katzman was entitled.

There is no indication in the Merger Agreement—or the Escrow Agreement, for that matter—that the parties ever anticipated a controversy of this nature. There is no basis to conclude that either party envisioned the scenario in which HoT, long after the merger closed,

would wrongfully refuse to return to Katzman part of the purchase price to which (after May 15, 2012) the selling shareholders were entitled.

To be sure, the language in § 10.6(b) of the Merger Agreement is broad. It limits the parties' indemnification rights "relating to this Agreement or the transactions contemplated hereby" to those contained in Article X of the Merger Agreement and provides that the parties "waive[] all other rights and remedies with respect to any matter in any way relating to this Agreement or arising in connection herewith, whether under any laws at common law, equity, or otherwise." MA § 10.6(b). But the indemnification rights accorded to the selling shareholders under Article X of the Merger Agreement, which appear in § 10.3, are addressed to a different situation altogether. They hold the selling shareholders harmless for losses caused by breaches by HoT of representations or warranties in the Merger Agreement. *See* MA § 10.3. Section 10.3 is not addressed to the rights of the selling shareholders in the event of a post-merger breach by HoT of its duties with regard to the escrow fund, and no other portion of the Merger Agreement addresses that subject either. Notably, the Merger Agreement provides that, other than as set forth in § 10.6(b), "[a]ny enumeration of the rights and remedies of the parties hereto in this Agreement is not intended to be exclusive, and a party's rights and remedies are intended to be cumulative to the extent permitted by law and include any rights and remedies authorized by law and in equity." MA § 10.6(a).

This case is thus unlike *J. D'Addario*, where the parties expressly anticipated a particular form of breach (a pre-closing failure to perform by the buyer) and agreed upon an exclusive remedy for that breach. The Court reads *J. D'Addario* to adopt a clear-statement rule governing waivers of a party's right under C.P.L.R. § 5001(a) to statutory prejudgment interest. Under *J. D'Addario*, parties may contract around that right, but to be valid, a party's waiver thereof must be clear and express, as in *J. D'Addario*, where the parties defined a specific problem and

9

"chart[ed] their own course" as to it in a "clear, complete document." 20 N.Y.3d at 119 (citation omitted). This reading accords with the New York Court of Appeals' requirements for waivers in other contexts. *See, e .g.*, *Fundamental Portfolio Advisors, Inc. v. Toqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (waiver "should not be lightly presumed" and "must be based on a clear manifestation of intent" to relinquish a right); *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988) ("Waiver is an intentional relinquishment of a known right and should not be lightly presumed."); *Navillus Tile, Inc. v. Turner Constr. Co.*, 2 A.D.3d 209, 211 (1st Dep't 2003) ("[T]he intent to waive a right must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act." (quoting *Orange Steel Erectors, Inc. v. Newburgh Steel Prods., Inc.*, 225 A.D.2d 1010, 1012 (3d Dep't 1996))).

Here, Katzman did not unmistakably manifest an intent to forego prejudgment interest for a wrongful refusal by HoT to consent to the release of funds from escrow. There is no basis to conclude that HoT and Katzman ever envisioned that type of breach. Still less is there a basis to conclude that they agreed to cabin Katzman's recovery to the return of escrow funds themselves, with no right to statutory prejudgment interest. Put in the terms used by the Court of Appeals in *J. D'Addario*, the parties to the Merger Agreement did *not* "chart their own course," 20 N.Y.3d at 119, as to this breach and fashion their own remedy for it. Rather, HoT, by improperly blocking release of nearly $9.4 million in escrow funds 17 months later, unilaterally steered the parties off course, into waters uncharted by their agreement.

It is, furthermore, unpersuasive to impute to the parties any such intent to dispense with prejudgment interest. First, there is no logical reason to assume that the selling shareholders would have agreed to forego the statutory right to such interest. In *D'Addario*, it made sense to agree to liquidated damages (the buyer's 10% down payment) as the seller's remedy. As the parties recognized, in the context of a commercial real estate sale, it would be impossible to

10

measure the seller's exact damages; the liquidated damages provision avoided litigation on that point. But here, there was no need to fashion a proxy for actual damages. Under § 10.2(g) of the Merger Agreement, HoT was required to specify the amount attributable to each claim it made against the escrow fund. Those amounts were held back from Katzman. *See* MA § 10.2(g). In the event of a breach by HoT, Katzman's damages were thus obvious: the sum corresponding to HoT's unjustified assertions of a "claim, assertion, event, or proceeding." *Id.* Katzman had no reason to forego the right to 9% interest on that sum.[2] And such an agreement would give HoT impunity to assert fabricated claims against the escrow fund. HoT would have no downside risk in doing so, because the money would stay in the escrow account until it was ordered to be paid to Katzman, but under no circumstances would HoT face financial consequences (*e.g.*, prejudgment interest) for having invented bogus claims to keep it there.

Second, even if one were to construe (as HoT does) the escrow fund as somehow capping Katzman's damages against HoT—as opposed to the correct reading in which the fund caps HoT's recovery against Katzman—that reading would still not avail HoT here. At most, the Merger Agreement can be said to impose a cap on the *aggregate* amount ($17.7 million) of a party's (HoT's) recovery from the escrow fund. *See* MA § 10.2(3)(ii). Other than the $17.7 million set aside in the escrow fund, the Merger Agreement does not reveal any other monetary cap on one party's liability to the other. There is, for example, no provision that prevents statutory prejudgment interest from running on sums whose release HoT withheld in breach of

---

[2] Notably, unlike the *J. D'Addario* contract, the Merger Agreement does not refer in its pertinent provisions to "liquidated damages." There is a liquidated damages provision in a different part of that agreement, § 11.3, which provides for a "Termination Fee" in the event that the merger between HoT and Kaz was not consummated. Section 11.3 provides that, in that circumstance, HoT was to pay $10 million to Kaz as the "sole and exclusive remedy" for any loss suffered as a result of the failure of the merger. The clause adds that "under no circumstances will [Kaz] be entitled to monetary damages in excess of the amount of the Termination Fee." MA § 11.3. Section 11.3 of the Merger Agreement, not § 10.6(b), is the provision in the Merger Agreement that equates most closely to the liquidated damages provision at issue in *J. D'Addario*.

11

the Merger Agreement. Thus, provided the aggregate amount of $17.7 million is not exceeded, there is no reason to limit the ability of statutory interest to accrue with regard to one or more improperly-made claims by HoT against the fund. Here, the 11 improper claims of tax deficiencies by HoT total $9,362,390. Attributing statutory interest to that sum would yield a sum that does not approach $17.7 million.

For these reasons, the Court holds that *J. D'Addario* is not controlling, that the parties did not agree to a waiver of Katzman's right under N.Y. C.P.L.R. § 5001(a) to prejudgment interest, and that Katzman is entitled as part of the judgment in this case to such interest with respect to the $9,362,390 which HoT, beginning as of May 16, 2012, wrongly refused to allow to be released from escrow. As the Second Circuit has explained, "[t]he purpose of the mandatory award of interest in property actions is to assure complete indemnification to plaintiffs whose property ha[s] been damaged by the wrongful act of another." *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 844 (2d Cir. 1993) (citation omitted) (alteration in original). That principle, not *J. D'Addario*, controls here. [3]

## CONCLUSION

In accordance with the stipulation of the parties, (1) the funds corresponding to Claims One, Two, Five, Six, Nine, and Ten—an amount equal to $2,303,613—shall remain in escrow;

---

[3] The Court also rejects HoT's contention that prejudgment interest does not begin running until a final, non-appealable judgment is entered. *See* Letter 9. Under New York law, prejudgment interest begins to run from the time of breach. *See* N.Y. C.P.L.R. § 5001 ("Interest shall be computed from the earliest ascertainable date the cause of action existed . . . ."); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 262 (1998) ("The award of interest reflects a recognition of the principle that damages are properly ascertained as of the date of the breach and a recognition that there may be a time lag between the accrual of a plaintiff's cause of action and the resulting damage sustained and actual payment by defendant."); *see also Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 845 (2d Cir. 1993) ("In order to provide the successful claimant with complete indemnification, prejudgment interest must be awarded from the date of the adjudicated deprivation."). The breach here occurred when HoT asserted improper claims upon the escrow fund and thereby deprived the selling shareholders of funds to which they were entitled. Accordingly, Katzman is entitled to prejudgment interest beginning on May 16, 2012.

(2) $37,771.60 shall be paid to HoT from the escrow fund immediately; and (3) all remaining money in the escrow fund shall be released to Katzman and the selling shareholders.

In addition, for the reasons stated above, the Court concludes that Katzman is entitled to prejudgment interest on HoT's Claims Three, Four, Eight, and Eleven through Eighteen. Accordingly, the Court awards Katzman the amount of those claims—$9,362,390—plus prejudgment interest at the rate of nine percent per annum, covering the period May 16, 2012 to the date of this judgment.

The Clerk of Court is directed to close the case.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: April 11, 2013
       New York, New York